Filed 10/28/13  P. v. Terrell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KENNETH MORGAN TERRELL,<br><br>　　　　Defendant and Appellant. | C072046<br><br>(Super. Ct. No. CRF12197) |

In April 2012, police arrested defendant Kenneth Morgan Terrell.  The car defendant was driving was impounded, and during the impound, a handgun that was "underneath the dash," "directly under the steering column," fell out.  The handgun was loaded with seven rounds of live ammunition.  In a backpack on the passenger's seat were two baggies of marijuana.  Defendant had a medical marijuana card.  In telephone jail conversations between defendant and his ex-wife, he said he was in jail because someone had told police he had a gun.  He said that "[t]hey found it" and that it was in the car.  When his ex-wife mentioned that she had told him to "get rid of that stupid thing" and that if he had listened to her he "wouldn't be in the position [he was] in," defendant responded, "I know."

1

In March 2007, defendant had admitted possessing 109 grams of methamphetamine that police found in "[t]he driver's side dash just underneath the steering wheel" in a car he was driving.

On trial for the gun and ammunition possession in 2012, a jury found defendant guilty of being a felon in possession of a gun and being in possession of ammunition when prohibited from doing so.

On appeal from the resulting judgment, defendant raises four contentions relating to: (1) the denial of a continuance to retain private counsel; (2) admission of the methamphetamine evidence; (3) admission of the marijuana evidence; and (4) the instructions. Disagreeing with these contentions, we affirm.

DISCUSSION

I

*The Trial Court Was Well Within Its Discretion To Deny*

*Defendant's Request For A Continuance Made On The First Day Of Trial*

Defendant contends the trial court abused its discretion in denying his request for a continuance to retain private counsel. As we explain, the court was well within its discretion to deny defendant's request for a continuance. (*People v. Mickey* (1991) 54 Cal.3d 612, 660 [standard of review].)

Defendant first expressed his desire to retain private counsel on July 16, 2012, and the court gave him two weeks to do so, stating that private counsel would have to show up at the next hearing, which was on July 30, 2012. Defendant nodded his head. However, at a pretrial conference on July 30, 2012, defendant appeared with his assistant public defender and made no mention of wanting to substitute retained counsel. Similarly, a week later, on August 6, 2012, defendant appeared with his assistant public defender at a trial readiness conference and again made no mention of wanting to substitute retained counsel. On August 14, 2012, which was the first day of trial, two weeks past the court's deadline for defendant to bring in retained counsel, and just before

2

the jury was being called, defendant asked for a continuance to retain private counsel. Although defendant identified private counsel by name, that attorney was not present in court and there was no indication defendant had actually retained him. Defendant also did not explain why he failed to comply with the court's earlier directive to have retained counsel in court on July 30. While defendant mentioned just prior to a hearing to substitute appointed counsel (*People v. Marsden* (1970) 2 Cal.3d 118) on August 13, 2012, that he and his assistant public defender were "not seeing eye to eye," the trial court noted when denying defendant's continuance request to substitute private counsel that the assistant public defender "has done an excellent job in preparation of [the] defense from [the court's] conversations with [defendant]."

In short, defendant waited literally to the last minute before trial was to begin to request a continuance, he did not have a good reason for doing so, and the People and assistant public defender were ready to go on the case. "The trial court acted within its discretion in denying [defendant]'s  motion for continuance, given his request's untimeliness, its lack of legally sufficient reasons and its adverse effect on the orderly administration of justice." (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 851.)

II

*The Trial Court Was Well Within Its Discretion To Admit Prior*

*Act Evidence That Defendant Previously Possessed Methamphetamine*

*Hidden In The Driver's Side Dash To Show Knowledge Of The Gun Here*

Defendant contends the court denied him a fair trial by admitting evidence that five years prior to the current crimes, he admitted possessing 109 grams of methamphetamine that police found in "[t]he driver's side dash just underneath the steering wheel" in a car he was driving. He claims the evidence was "highly inflammatory" because it portrayed him as a "major drug dealer," which was "why he carries a firearm in his car."

3

As we explain below, the court did not abuse its discretion in admitting the prior act evidence because knowledge of the gun was a contested material fact; the prior act had a tendency in reason to prove defendant's knowledge; and the prior act was not unduly prejudicial. (*People v. Kipp* (1998) 18 Cal.4th 349, 369 [standard of review]; *People v. Carpenter* (1997) 15 Cal.4th 312, 378-379 ["The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence"].)

The court instructed the jury that the prior act evidence was to be used for the "limited purpose of deciding whether or not . . . defendant knew that the gun was hidden under the dashboard." Knowledge of the gun was a contested material fact because the entire defense was that "the People have not proven beyond a reasonable doubt that [defendant] had knowledge that the gun was in the car." The prior act of defendant hiding methamphetamine in the exact same clandestine location where the gun was found had a tendency in reason to show defendant knew the gun was hidden there as well. And, finally, the evidence was not unduly prejudicial. In the prior act, the police found a large amount of methamphetamine. Here, the police found a gun that was loaded. True, the prior act had a lot of drugs, possibly indicating sales, but the current act had something arguably more immediately dangerous -- a loaded gun. In balancing the probative value against the prejudicial effect of the prior act evidence, we cannot say the court exceeded the bounds of reason in admitting the evidence.

III

*The Trial Court Was Well Within Its Discretion To Admit Evidence*
*That Defendant Possessed Marijuana In The Car*
*To Show Motive For Possessing The Gun*

Defendant contends the court abused its discretion in admitting evidence he possessed two baggies of marijuana that were found in a backpack on the passenger's

seat in his car. He claims the evidence was "inherently prejudicial," because he was never charged with marijuana-related crimes here and because the jury "could have misused this evidence to view [him] as dangerous, as someone who may have been transporting drugs for sale or driving under the influence of drugs."

As we explain below, the court did not abuse its discretion in admitting the evidence to show motive for possessing the gun. As the trial court explained when deciding to admit this evidence (and to exclude evidence of marijuana found in defendant's residence): "I would agree with defense counsel that the marijuana at the residence is not relevant. But if he's in a vehicle and he has something that is ex[p]ensive, something that others might want to take . . . [i]t is not a cheap substance. [¶] So that's sort of like carrying a bag of cash or expensive jewelry or motive to mug somebody who has an expensive watch. There is a motive to carry a gun to protect one's self so possessions are not taken." In essence, what the trial court was correctly explaining was that evidence defendant possessed marijuana had a tendency in reason to show he possessed the gun as well, i.e., to protect the marijuana from being stolen. (See Evid. Code, § 210 [relevant evidence includes evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)

As to defendant's arguments the evidence was "inherently prejudicial," because he was never charged with marijuana-related crimes and because the jury "could have misused this evidence to view [him] as dangerous, as someone who may have been transporting drugs for sale or driving under the influence of drugs," those arguments do not make the trial court's decision to admit the evidence an abuse of discretion either. The court also admitted evidence defendant had a medical marijuana card, dispelling any notion the marijuana here might have been illegally possessed under California law. Defendant's medical marijuana card, the fact he had only two baggies, and the lack of charges relating to the marijuana tended to show the marijuana was not possessed for

5

reasons other than personal, medical use.  Equally, the admission of the marijuana evidence did not paint defendant as one who drove under the influence.  There was no evidence of erratic driving and there was no evidence that the patrol deputy who pulled defendant over administered any field sobriety tests.

On this record, the trial court was well within its discretion in determining  that any prejudicial nature of the marijuana evidence was not significantly outweighed by its probative value.  (See Evid. Code, § 352 ["The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ."]; *People v. Fuiava* (2012) 53 Cal.4th 622, 663 ["We review for abuse of discretion a trial court's ruling to exclude proffered relevant evidence under Evidence Code section 352"].)

IV

*The Court Did Not Err In Its Instructions On How To Treat*

*The Methamphetamine Evidence And The Marijuana Evidence*

Defendant contends the court made multiple errors when instructing the jury how to use the methamphetamine and marijuana evidence.  We conclude that the instructions were correct.

A

*The Instructions Regarding Methamphetamine and Marijuana*

The court orally instructed pursuant to CALCRIM No. 375 as follows:  "The People presented evidence that the Defendant possessed marijuana in his vehicle and also that in an unrelated case from 2007 the Defendant possessed methamphetamine in the truck that he had been driving.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the acts. . . .  If you decide that the Defendant committed either or both of these acts, you may, but are not required to, consider that evidence for the limited purposes of deciding

6

whether or not, one, the Defendant had a motive to commit the offenses in this case and, two, knowledge: The Defendant knew that the gun was hidden under the dashboard."

Then, however, defense counsel asked to approach and following an off-the-record sidebar, the court told the jury the following: "I'm going to order you to disregard that instruction. I'm going to strike it, and I'm going to read it over as we changed it to more appropriately fit the evidence in this case." "The People have presented evidence that the Defendant, in an unrelated case from 2007, possessed methamphetamine in a truck that he had been driving. You may consider this evidence, only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the acts . . . . If you decide that the Defendant committed this act, you may, but are not required to, consider the evidence for the limited purpose of deciding whether or not the Defendant knew that the gun was hidden under his dashboard, in other words, for knowledge."

"In evaluating this evidence consider the similarity or lack of similarity between the uncharged act and the charged offenses. Do not consider this evidence for any other purpose except for the limited purpose of determining the Defendant's credibility. I'm going to strike that phrase and you are ordered to disregard the last paragraph that was read. [¶] Do not conclude from this evidence that the Defendant has a bad character or is disposed to commit this crime. If you conclude that the Defendant committed the uncharged act, that conclusion is only one factor to consider along with all of the other evidence."

The written instructions provided to the jury on the topic of motive and the methamphetamine evidence were provided in a series.

The first was on motive and read as follows: "The People are not required to prove that the defendant had a motive to commit the crimes charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

7

The second was a special instruction that the surveillance of defendant's residence, the tracking of his car, his detention, and arrest were all legal and jurors should not speculate as to the reasons.[1]

The third and final was CALCRIM No. 375 as follows: "The People presented evidence that the defendant [in] an unrelated case from 2007 possessed methamphetamine in the truck he had been driving. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the acts. . . . [¶] . . . [¶] If you decide that the defendant committed of [*sic*] the act, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] . . . [¶] Knowledge [¶] The defendant knew that the gun was hidden under the dashboard. [¶] . . . [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged acts and the charged offenses. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged acts, that conclusion is only one factor to consider along with all of the other evidence."

B

*The Written Instructions As A Whole Were Correct*

Defendant makes a number of arguments as to why these instructions were wrong, misleading, and incomplete.

We address each in turn, starting with two observations. One, "[t]o the extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions provided to the jury will control." (*People v. Wilson* (2008) 44 Cal.4th 758, 803.) Two, the court instructed the jury to "[o]nly consider the final version of the

---

[1] The same motive instruction and special instruction were also read to the jury in this same order.

8

instructions in your deliberations." With these observations in mind, we turn to defendant's arguments.

One, defendant argues the jury was left without instruction on how to use the marijuana evidence. This is not true. The marijuana evidence was motive evidence, and the jury was instructed that it "may . . . consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty."

Two, defendant argues the jury had the "potential for confusion" because it was first told it could use the methamphetamine evidence for motive (as well as knowledge) and then was told to consider it only for knowledge. This argument is a nonstarter because the jury was specifically told the instructions in their final form control and the written instructions correctly stated the methamphetamine evidence was to be used for knowledge only. (*People v. Wilson*, *supra*, 44 Cal.4th at p. 803 ["To the extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions provided to the jury will control"].)

Three, defendant argues that CALCRIM No. 375 was wrongly pronounced and written because while referencing the uncharged act as possession of methamphetamine, the body of the instruction referred to "acts," namely: "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the acts." Defendant rhetorically asks, "Which *acts* needed to be proven by a preponderance of evidence? The 2007 methamphetamine case? The marijuana possession? [Th]e current gun case?"

Based on our review of the instructions as a whole, we do not believe there was a reasonable likelihood the jury was misled. (See *People v. Wilson*, *supra*, 44 Cal.4th at p. 803 ["When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied

9

the challenged instruction in an impermissible manner"].) Here, we believe the jury would have understood CALCRIM No. 375 to apply to only the methamphetamine possession and would not have been confused as to what the uncharged "act" or "acts" were. The final version of CALCRIM No. 375 as written stated at the beginning, "The People presented evidence that the defendant [in] an unrelated case from 2007 possessed methamphetamine in the truck he had been driving." Thus, the instruction articulated only one episode to which this instruction applied, i.e., the 2007 methamphetamine possession. It is true in three other parts of the instruction the court referred to "acts," (i.e., (1) "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the acts"; (2) "In evaluating this evidence, consider the similarity or lack of similarity between the uncharged acts and the charged offenses"; (3) "If you conclude that the defendant committed the uncharged acts, that conclusion is only one factor to consider along with all of the other evidence"). But in the crucial part of the instruction explaining for what to use the evidence, the court referred only to "act." Namely, "If you decide that the defendant committed of [*sic*] the act, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] . . . [¶] Knowledge [¶] The defendant knew that the gun was hidden under the dashboard." Thus, we believe the jury would have understood that the 2007 methamphetamine evidence only was to be used for knowledge and that the instruction referred to that episode only, given that at the outset, the instruction defined the at-issue episode as the 2007 methamphetamine case.

Four, defendant argues the court erred when orally instructing the jury on CALCRIM No. 375 and at one point said, "Do not consider this evidence for any other purpose except for the limited purpose of determining the Defendant's credibility" but immediately after told the jury "to strike that phrase and you are ordered to disregard the last paragraph that was read." Defendant claims the jury would not have understood what that meant because the jury was "hearing a long and continual recitation." Again,

10

defendant's argument as to the oral instruction is a nonstarter because the written version of CALCRIM No. 375 was correct in that it omitted reference to the paragraph that stated, "Do not consider this evidence for any other purpose except for the limited purpose of determining the Defendant's credibility."

Fifth and last, defendant argues it was error for the court to instruct pursuant to CALCRIM No. 375 that in evaluating the methamphetamine evidence, "consider the similarity or lack of similarity between the uncharged acts and the charged offenses." Defendant argues that this part of the instruction should be given "only . . . when instructing on evidence that has been admitted based on similarity to the current offense." Accepting the premise of defendant's argument as true, the evidence of the methamphetamine possession *was* admitted because of its similarity to the gun possession here. Namely, that possession was similar because the methamphetamine was secreted in the same location as the gun, thereby having a tendency in reason to prove defendant knew the gun was there.

## DISPOSITION

The judgment is affirmed.


                                         _____ROBIE_____, J.



We concur:



_____HULL_____, Acting P. J.



_____MAURO_____, J.


11